IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| FADIL NUREDINI, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 12 C 317 |
| | ) | |
| JANET NAPOLITANO, | ) | |
| | ) | |
| Respondent. | ) | |

**MEMORANDUM OPINION**

SAMUEL DER-YEGHIAYAN, District Judge

This matter is before the court on Defendants' (collectively referred to as "Government") combined motion to dismiss and motion for summary judgment. For the reason stated below, the Government's combined motion is granted in its entirety.

**BACKGROUND**

Plaintiff Fadil Nuredini (Nuredini) is a native and citizen of Kosovo (formerly the Republic of Yugoslavia and Serbia-Montenegro). In 2003, Nuredini entered the United States using a passport containing an assumed name and identity. In December 2006, an immigration judge granted Nuredini's request for asylum. In December 2007, Nuredini filed a Form I-485, Application to Register Permanent

1

Residence or Adjust Status (Adjustment Application).  The Government contends that the required background and name checks were completed by the Government in January 2008.  Subsequently, United States Citizenship and Immigration Services (USCIS) placed the Adjustment Application on administrative hold and the application remains pending.

The Government contends that the Adjustment Application is not being delayed because of background and security checks.  The Government asserts that Nuredini indicated in his asylum application that he was trained as a military sniper by the Armed Forces of Kosovo (FARK) and Nuredini admitted to participating in armed combat in 1998 and 1999 against the Serbian government forces and to killing Serbian soldiers.  According to the Government, based on the violent activities and objectives of FARK, USCIS determined that FARK meets the definition of a Tier III undesignated terrorist organization.  The Government asserts that if USCIS was required to complete the adjudication of the Adjustment Application today, the application would be denied based on terrorism-related inadmissibility grounds.  The Government also indicates that the Secretary of the Department of Homeland Security (Secretary) has discretionary authority to exempt certain Tier III groups or individuals when appropriate, but that to date, no exemption is in place for FARK or Nuredini.  The Government contends that the Adjustment Application remains on

hold in accordance with agency policy pending future exemption-related guidance. Nuredini brought the instant action pursuant to the Mandamus Act, 28 U.S.C. § 1361, and the Administrative Procedures Act, 5 U.S.C. § 551 *et sq.* to compel the Government to adjudicate the Adjustment Application. The Government now moves to dismiss this action for lack of subject matter jurisdiction, arguing that the decision to place Nuredini's Adjustment Application on hold is an unreviewable discretionary determination. The Government also moves in the alternative for summary judgment, arguing that the delay of processing the Adjustment Application, is as a matter of law, not unreasonable.

## LEGAL STANDARD

Federal Rule of Civil Procedure 12(b)(1) (Rule 12(b)(1)) requires a court to dismiss an action when it lacks subject matter jurisdiction. *United Phosphorus, Ltd. v. Angus Chemical Co.*, 322 F.3d 942, 946 (7th Cir. 2003). If the concern of the court or party challenging subject matter jurisdiction is that "subject matter jurisdiction is not evident on the face of the complaint, the motion to dismiss pursuant to Rule 12(b)(1) would be analyzed as any other motion to dismiss, by assuming for purposes of the motion that the allegations in the complaint are true." *Id.*; *see also Ezekiel v. Michel*, 66 F.3d 894, 897 (7th Cir. 1995)(stating that when

reviewing a motion to dismiss brought under Rule 12(b)(1), this court "must accept as true all well-pleaded factual allegations, and draw reasonable inferences in favor of the plaintiff"). However, if the complaint appears on its face to indicate that the court has subject matter jurisdiction, "but the contention is that there is *in fact* no subject matter jurisdiction, the movant may use affidavits and other material to support the motion." *United Phosphorus, Ltd.*, 322 F.3d at 946 (emphasis in original). For the purpose of determining subject matter jurisdiction, this court "may properly look beyond the jurisdictional allegations of the complaint and view whatever evidence has been submitted on the issue to determine whether in fact subject matter jurisdiction exists." *Ezekiel*, 66 F.3d at 897 (quoting *Capitol Leasing Co. v. Federal Deposit Insurance Corp.*, 999 F.2d 188, 191 (7th Cir. 1993)). The burden of proof in a Rule 12(b)(1) motion is "on the party asserting jurisdiction." *United Phosphorus, Ltd.*, 322 F.3d at 946.

Summary judgment is appropriate when the record, viewed in the light most favorable to the non-moving party, reveals that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56; *Smith v. Hope School*, 560 F.3d 694, 699 (7th Cir. 2009). A "genuine issue" of material fact in the context of a motion for summary judgment is not simply a "metaphysical doubt as to the material facts." *Matsushita Elec. Indus.*

*Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). Rather, a genuine issue of material fact exists when "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986); *Insolia v. Philip Morris, Inc.*, 216 F.3d 596, 599 (7th Cir. 2000). In ruling on a motion for summary judgment, the court must consider the record as a whole, in the light most favorable to the non-moving party, and draw all reasonable inferences in favor of the non-moving party. *Anderson*, 477 U.S. at 255; *Bay v. Cassens Transport Co.*, 212 F.3d 969, 972 (7th Cir. 2000).

**DISCUSSION**

I.  Lack of Jurisdiction

The Government argues that this court lacks subject matter jurisdiction in this case because the court lacks jurisdiction to review a discretionary determination by USCIS. The lack of jurisdiction over "[d]enials of discretionary relief," is addressed in 8 U.S.C. § 1252(a)(2)(B), which provides as follows:

> Notwithstanding any other provision of law (statutory or nonstatutory), including section 2241 of Title 28, or any other habeas corpus provision, and sections 1361 and 1651 of such title, and except as provided in subparagraph (D), and regardless of whether the judgment, decision, or action is made in removal proceedings, *no court shall have jurisdiction to review - -*
> (i) any judgment regarding the granting of relief under section 1182(h),

5

>1182(i), 1229b, 1229c, or 1255 of this title, or
>(ii) *any other decision or action* of the Attorney General or the Secretary of Homeland Security the authority for *which is specified under this subchapter to be in the discretion of the Attorney General or the Secretary of Homeland Security*, other than the granting of relief under section 1158(a) of this title.

8 U.S.C. § 1252(a)(2)(B)(emphasis added). The decision by USCIS over how and when to adjudicate an adjustment of status application of an asylee is a discretionary determination by the Secretary, which is covered by 8 U.S.C. § 1252(a)(2)(B)(ii). *See, e.g.,* 8 U.S.C.§ 1159(b); 8 U.S.C.§ 1255; 8 U.S.C. § 1182(a); 8 C.F.R. § 209.2.

The Government points out that the Adjustment Application is merely on hold and this case does not represent an instance when the Government has failed to act or has indicated that it will not act in the future. The Government has also listed a series of recent instances when exemptions were issued and the Secretary exercised her exemption for certain individuals whose adjustment applications would otherwise have been denied based on terrorism-related inadmissibility grounds. (Mot. 10 n.4). The Government contends that such exemptions show that the delay in the Adjustment Application for Nuredini will not be an indefinite delay as argued by Nuredini. The Government contends that it is fulfilling its duty to act on the Adjustment Application by making the decision to place it on hold, pending the availability of a potential exemption. The Government correctly points out that the mere fact that a final decision has not been made on the Adjustment Application does

6

not show that the Government is failing to exercise its administrative duties. Further, the fact that the Government has placed the Adjustment Application on hold pending a viable solution in the form of an exemption for Nuredini's potential ineligibility for Adjustment of Status reflects that the Government is exercising its discretion properly in the adjudication process.

    The provisions in 8 U.S.C.§ 1159(b) contain the requirements for adjustment to permanent residence of aliens granted asylum. That section provides: "The Secretary of Homeland Security or the Attorney General, in the Secretary's or the Attorney General's *discretion* and under such regulations as the Secretary or the Attorney General may prescribe, *may adjust* to the status of an alien lawfully admitted for permanent residence the status of any alien granted asylum. . . ." *Id.* (emphasis added). The regulations promulgated pursuant to the above statute are contained in 8 C.F.R. § 209.2. The provisions in 8 C.F.R. § 209.2 relating to adjustment of status of an alien granted asylum are the sole and exclusive procedures for such an application. Section (a)(1) of 8 C.F.R. § 209.2 provides that the status of any alien who has been granted asylum in the United States, "may be adjusted," by the immigration authorities to that of a permanent resident of the United States. The words in the statute "discretion" and "may adjust," and the words in the regulations "may be adjusted" reflects a totally discretionary decision that falls within

7

jurisdictional bar for review by courts under 8 U.S.C. § 1252(a)(2)(B). Thus, since the adjudication of such an Adjustment Application is a discretionary determination under 8 U.S.C. § 1252(a)(2)(B)(i), and, in addition, since the determination to withhold a final decision on the Adjustment Application is an action or decision of the Secretary under 8 U.S.C. § 1252(a)(2)(B)(ii), this court lacks subject matter jurisdiction in the instant action. The Court notes that the Government also moves to dismiss the instant action pursuant to Federal Rule of Civil Procedure 12(b)(6), but that argument is moot in light of the dismissal pursuant to Rule 12(b)(1).

II. Reasonableness of Delay

The Government argues that, even if this court has subject matter jurisdiction, the court can find as a matter of law that any delay in adjudicating the Adjustment Application is not an unreasonable delay. Pursuant to 5 U.S.C. § 555, an agency decision must be made "within a reasonable time. . . ." *Id.*; *see also* 5 U.S.C. § 706(1)(stating that "[t]o the extent necessary to decision and when presented, the reviewing court shall decide all relevant questions of law, interpret constitutional and statutory provisions, and determine the meaning or applicability of the terms of an agency action" and "[t]he reviewing court shall-- compel agency action unlawfully withheld or unreasonably delayed"); *Telecommunications Research and Action*

*Center v. F.C.C.*, 750 F.2d 70, 80 (D.C. Cir. 1984)(listing factors to consider when assessing the reasonableness of a delay). The Government has shown that the hold on the Adjustment Application is consistent with the enactment of Consolidated Appropriations Act of 2008 (CAA) and USCIS's CAA-based policy and its discretionary authority. *See Alghadbawi v. Napolitano*, 2011 WL 4390084, at *3 n.2 (S.D. Ind. 2011)(explaining that in the CAA "Congress granted the government expanded authority to exempt either individuals or organizations from the purview of 8 U.S.C. § 1182(a)(3)(B)"). The USCIS's delay in adjudicating Nuredini's Adjustment Application is solely for the benefit of Nuredini. The USCIS has the authority to deny Nuredini's application without the exemption as a matter of discretion as the case stands now, and Nuredini will not be able to challenge a decision of the USCIS in any court under 8 U.S.C. § 1252(a)(2)(B)(i).

In addition, the Government points out that there is no Congressionally mandated timetable in which Congress expressed an opinion as to the time period within which an asylee adjustment application should be adjudicated. The adjudication of an application for adjustment of status can never be pursuant to a uniform time-table since each application requires its own processing time based on the individual's history and background and factors present in each case. The Government also points out that, although there has been no finding at this juncture

that Nuredini represents a national security risk, such risks must be evaluated which adds to the complexity of the adjudication of the Adjustment Application.  The Government has provided a declaration by Julia Doig Wilcox, at the time an Acting Assistant Center Director of the Nebraska Service Center in Lincoln, Nebraska, explaining in detail what the exemption process entails.  (Mot. Ex. 1).  The Government has shown that the exemption process is not a quick process since it requires, among other things, consultation between the Secretary of State, the United States Attorney General, and the Secretary of Homeland Security.  The process relating to an exemption to allow the adjustment of status for certain individuals who may be classified as terrorists is not a simple task.  The Government has also shown that the exemption process requires research by law enforcement and intelligence agencies and coordination among cabinet officials.  The Government also cites various cases in which extensive delays based upon the exemption process were not found to be unreasonable.

Nuredini has not shown that he is prejudiced by the delay in the adjudication of the Adjustment Application.  Although Nuredini contends that he is being kept apart from his fiancé and daughter, such an argument alone is not the type of prejudice that is required, and the Government has correctly pointed out that his daughter is a United States citizen who has the right to travel to the United States at

any time and that his fiancé has other means to apply for a visa to come to the United States.  Further, the Government has correctly pointed out that during the pending Adjustment Application, Nuredini has been eligible to apply for travel documentation allowing him to travel abroad, and the court notes that by virtue of his Asylee status, he has authorization for employment in the United States.

The Government also correctly points out that ordering the expedition of the adjudication of the Adjustment Application over similar applications will force USCIS to give the application a higher priority over other tasks and will intrude on the discretion provided by Congress to the Secretary.  Finally, the record does not reflect any intentional delays or inexcusable lassitude on the part of the Government in adjudicating the Adjustment Application.  As a matter of fact, the Government's action in placing Nuredini's application on hold for the potential benefit of Nuredini is a commendable exercise of discretion since the Government would have no alternative but to deny Nuredini's application as it stands now, and such a denial would not be subject to judicial review under 8 U.S.C. § 1252(a)(2)(B)(i).  Therefore, even if the court had subject matter jurisdiction in this case, Nuredini has not shown that the delay in the adjudication of the Adjustment Application has been an unreasonable delay without a basis or shown that this case involves the type of egregious action warranting a mandamus.  Based on the above, the court grants the

Government's combined motion to dismiss and motion for summary judgment in its entirety.

## CONCLUSION

Based on the foregoing analysis, the court grants the Government's combined motion to dismiss and motion for summary judgment in its entirety.

_____
Samuel Der-Yeghiayan
United States District Court Judge

Dated: June 26, 2012